Case No. 18-1342 AL, American Sales & Management Organization LLC, DEA, ULIN America, Petitioner v. National Labor Relations Board, Mr. Koji for the Petitioner, Mr. Rajapaksa for the Respondent, and Mr. Dranko Otis for the Intervener. Good morning. Good morning. May it please the Court, my name is Brian Koji here on behalf of the Petitioner, ULIN America. Your Honors, the issue in this case is whether there was substantial evidence to support the NLRB's determination that ULIN America was subject to the jurisdiction of the National Labor Relations Act and not to the jurisdiction of the Railway Labor Act. In making that decision, the NLRB determined that the air carriers, the airlines that are ULIN's clients, did not exercise significant control over ULIN's operations. We submit to you that that determination ignored a whole swath of evidence in the record and was contrary to the totality of the circumstances. ULIN America, the case here arises out of Fort Lauderdale Airport. ULIN America services six airlines in Fort Lauderdale. That's WestJet, Bahamas Air, Delta, American Air, Spirit, and JetBlue. They perform different services for these. What the NLRB did in this case was they cherry-picked data from some of the client contacts, some of it, for example, American Airlines. If all we had here was ULIN servicing American Airlines, the NLRB's decision likely is correct. Because American Airlines, all that ULIN does for American is clean its terminal offices and does checkpoint services. It's the traffic company come into the American terminal. What the NLRB didn't do is it didn't look at the other airlines. There's only 10 to 12 employees employed by ULIN to service American Airlines out of 172. The bulk of ULIN's employees service Spirit Airlines, Delta, and WestJet. In our reply brief, we tried to narrow it down as succinctly as possible. If you look at WestJet and what ULIN does for WestJet at Fort Lauderdale, we submit you cannot come to any conclusion other than the airlines directly control. So is one carrier sufficient to demonstrate control? I think one carrier is sufficient in this case because of the volume, but we also have Delta and Spirit. And Delta and Spirit are by far the largest clients of ULIN in Fort Lauderdale. There are 25 to 30 employees of ULIN that service WestJet out of 172. So do you think it was error for the NLRB to look at all the carriers? They can look at all the carriers. You should take the totality of the circumstances. But to focus on the carriers where we only have 10 employees working on and pull all the data from there for the most part, that was erroneous. The underlying unfair labor practice charge related to the firing of a particular woman who was picketing, is that right? Correct, Ms. Joanna Alexander. On what airline did she work? Your Honor, I believe it was either Spirit or Delta. It was not American Airlines. Well, what I wondered is why are all the airlines being looked at? I don't know. Was she assigned to whatever particular airline on a semi-permanent basis? Ms. Alexander was assigned to a specific airline. Generally what ULIN does. Why wouldn't it be? Why is it? Why are we looking at all these other airlines? Because, Your Honor, you're either subject to the jurisdiction of the Railway Labor Act or it's a National Labor Act. You cannot be subject to both jurisdictions at the same time, same location. Yeah, I understand that. But making that determination, why shouldn't it be specific to the particular employee? If you had a relationship with that particular airline where they had much more control than, say, United or American or whatever, these other ones, then that would make a difference, wouldn't it? With all due respect, I don't think it would, Your Honor, because while this case involves just the single unfair labor practice with a single employee, the ramifications for the company and for all the employees go beyond that. So if ULIN, for example, is subject to the Railway Labor Act, then these employees, all 172 at Fort Lauderdale, all of the employees, the rest of the employees on the Spirit Airline account, they're not allowed to simply go on strike. The purpose of the Railway Labor Act when it was passed is different from the National Labor Relations Act, was precisely to prevent that kind of disruption. If you have disruption that you would normally have in another industry, you can shut down air cargo and airline passengers so that the railway industry and the airline industry, Congress set those apart differently. So to have the test turn on a specific airline or specific employee where it might be different for one employee versus the other, maybe that would be workable in an unfair labor practice where you're only dealing with a single employee, but with regard to the rest of the labor law, how we deal with strikes, work stop decisions, things of that nature would be unworkable. The way the statute's written here is if you are an employer and you have any employees subject to the Railway Labor Act, then you're not subject to the National Labor Relations Act. In our view, we look at it, if you look at WestJet and everything that ULIN does for WestJet at Fort Lauderdale, there is no WestJet employees in Fort Lauderdale. But you didn't answer Judge Rao's question, which is, is there any authority for the proposition that even if there's one airline for whom you could say they exercise control over ULIN but the other five don't, that that would be sufficient? Is there any authority for that proposition? There's no authority specifically on that point. The authority says you look at the totality of the circumstances. Just so I'm clear, we are not relying solely on WestJet. We think that's the most obvious example. Spirit and Delta and WestJet, those three together make up more than 90 percent of all employees at ULIN at Fort Lauderdale. You look at those three together, they control ULIN, everything about ULIN. For example, the training component of the six-factor test. What the NRB says is, in one sentence, ULIN by and large controls the training, provides the training. That is absolutely not supported by this record. Delta, Spirit, and WestJet all dictate the training. Spirit and Delta provide computer systems where all ULIN employees have to sit down and pass and take those tests. I thought the board said that ULIN provides a 900-page training manual or something like that. The board, the brief, keeps referring to 900-page training manual. The record, there is a 900-page training manual, but the record in this case says that that only applies to Bahamas Air. Bahamas Air is the only one. That 900-page training manual is for all locations for ULIN around the country. The record evidence is that when the carriers have their specific training that they mandate, we use their training. When they don't, we use our manual. In this case, the specific question was asked of the training director, who does that manual apply to at Fort Lauderdale? They said, Bahamas Air. The follow-up question was asked, does it apply to anybody else? His answer was no. That's because it doesn't apply. That training manual is not even completely in the record, only the first chapter for that reason. So do you think the NLRB was required to refer this question of jurisdiction to the NMB? We do think it should have been referred and was required. Their precedent is they refer it as a matter of course, but they reserve the right not to refer it when they think there's a clear answer. What happened here is there was a four- or five-year gap where they changed the test, and this court later found that to be erroneous. So during that year, four- or five-year gap, they were not referring any cases to the NMB. Did you file a motion before the NLRB to refer it to the NMB? We did not file a motion. We did ask in our exceptions that it be referred to the NMB. You asked the NLRB? We did ask that in our brief to the NLRB, yes. Do you wish to reserve any time for rebuttal? Yes, Your Honor. I'd like to reserve one minute, and this may be a good break. Thank you. Thank you. Good morning, Your Honor. May it please the Court. My name is Neelakshmi Rajapaksa. I'm counsel for the National Labor Relations Board. The record fully supports the Board's assertion of jurisdiction over the company in this case, and more specifically, it's finding that the company is not under significant carrier control at FLL. The Board considered not only the contracts that the company very much emphasizes in this court, but also the testimony of witnesses who had firsthand knowledge of how those contracts were applied on-site. And the testimony taken together with the contracts does not show control. In considering the entire record in this manner, including the testimony, the Board stayed very much consistent with this Court's observation in ABM on-site, that to assess control, it is important to understand the extent of the carrier's contractual and practical involvement in the contractor's affairs. In this case, the record shows that the carrier's practical involvement in day-to-day affairs is highly limited. The carriers do not supervise employees. They do not assist the company in developing schedules and staffing plans. They seldom communicate at all about specific employees employed by the company. And the company has, contrary to what counsel has just stated, the company has in place its own independent training requirements, and they're quite extensive. And the testimony of Mr. Foster, who presides over the company's training program and develops the manual, testified several times, and the relevant Joint Appendix citations are in the Board's brief, but he testified that essentially the company only follows a carrier's training path when the carrier's training subsumes the material in the company's training manual. And he was emphatic on that point. So I have to disagree with counsel that the company is led by carriers in respect to training. Why is it, this test, where does it come from? The six-factor test? The six-part factors, six factors with no particular weight to any of them. Where does that test come from? The test was developed by the National Mediation Board. Right, I understand that. Where did they get it? They've developed this test over decades. It dates, well, this court stated that the purpose of the Railway Labor Act is to prevent disruption in transportation, correct? Right, but the word control. Well, if that's the reason behind it, then where in this test does that have any bearing on the ultimate purpose of the Railway Labor Act? The word control is in the Railway Labor Act. So the Railway Labor Act essentially imposes a two-factor inquiry when it comes to derivative carrier status. The requirement is not only that the contractor perform a function traditionally performed by a carrier. There's a second part. It has to be, the contractor has to be directly or indirectly under the control of or commonly controlled with a carrier or carriers. That's part of the, what section of the Railway Labor Act? That's Section 151 of the Railway Labor Act. Well, that was my question. So why in this case did the NLRB not refer the matter to the NMB for a jurisdictional determination as it normally does? Well, as this Court has recognized in several cases, the Board is not obliged to refer cases to the NMB. But it usually refers to the NMB. It refers when there is substantial doubt about the outcome of the inquiry under the six-factor test. And then if the NMB does issue an opinion, the Board then, as a matter of comedy and so on, defers to the NMB's determination. But in this case... So the real question is whether the referral is made in the first place. Right. In this case, the Board found that the factors overwhelmingly support a finding that the carriers do not control the company. And if you look at some of the factors that I mentioned earlier, supervision, control over personnel decisions, influence over training... But here, did the NLRB explain why it was not referring the matter? The NLRB wasn't obliged to explain. And I will also mention, Your Honor, that the company referred in passing to referral in its brief in support of exceptions. It didn't actually accept the judge's decision and specifically request referral. And the Board's practice is that... And the Board's rules and regulations require that in order to preserve an issue, the company has to raise it in its exceptions, in its actual exceptions. There was a passing reference to possible referral in the company's brief in support of exceptions, and that wasn't sufficient, I would say, to raise the issue to the Board. The company also has waived referral before this Court. It didn't argue referral in its brief. So I would ask that the judges be attentive to that as well. The company's argument before this Court has very much been about the merits of the Board's finding as to lack of control. And if I may just go into this WestJet issue that the company has raised, I'll just say the company greatly emphasizes the fact that it stands in for WestJet, essentially, in some respects, at FLL. But the test, this control test, is not whether a carrier gives over an aspect of its operations, essentially, to a contractor. It's whether it controls the contractor. And that's a separate... Have you compared the Board's analysis in this case with the Board's analysis in Browning-Ferris? I have not, Your Honor. Okay. At Browning-Ferris, the question was whether one company was a joint employer of another. And the Board's analysis here is, to my mind anyway, the direct opposite of what it did in Browning-Ferris. And I'll give you an example. One of the factors is, under one of the factors, the right to request discipline, a carrier requesting discipline of a ULIN employee shows what? Control. That shows control. In Browning-Ferris, it's just the opposite. Because if the main employer had to request the company to do something, then it didn't control the company. It was only making a request. Anybody can make a request. Right. So there's... I don't know. What's happened with Browning-Ferris, by the way? I couldn't tell you. I really haven't... It's on remand, I know. ...the progress of that case. From rulemaking. Yeah. I will just note that the Board, in this particular jurisdictional area, is applying, really, the National Mediation Board's interpretation of the Railway Labor Act and the requirements of that separate statute. So it really is not within the Board's control to define what constitutes carrier control. So there's more reason to refer it, isn't there? Well, no. The terms of the test are clear. I'm just saying that to the extent there appears to be any inconsistency... But is the NLRB really applying the test in the same way? I think some of the NMB precedent suggests that any carrier is sufficient to establish control, whereas the NLRB seems to be suggesting that you need to have many, most, or all of the carriers exerting control. I disagree, Your Honor. I mean, I do think that some of the cases, if you look at Ogden Aviation, for example, or even Prime Flight, which is a case that the company has cited, the sort of takes into account the totality of the circumstances, and that's precisely what the Board did in this case. Isn't one of the concerns that if this goes to the NMB, then they find jurisdiction under the RLA, and if it stays with the NLRB, that they don't? I mean, isn't that the practical outcome in many of these cases? I couldn't say that that's true, Your Honor. I haven't surveyed all of the cases. But in this instance, the Board acted very much within its range of authority in maintaining the case and in applying the NMB's test and finding that five of six factors favor a finding of poor jurisdiction. Thank you very much. Thank you. All right. We'll hear from counsel for intervener. Good morning, Your Honors. My name is Jessica Drangel-Oaks. I represent the intervener, SEIU Local 32BJ in this matter, and I'm here to support the Board's cross-petition. The record supports, substantial evidence supports the finding here that ULIN falls under the National Labor Relations Act. I'd first like to say something about the test in response to some of your questions. It is true that all carriers are considered, the totality of circumstances are considered when evaluating the test. And I don't believe, Your Honor, there's any difference between how the NLRB has  And as counsel for the Board pointed out, or I think Mr. Koji mentioned, there is no authority for the view that a single carrier should determine the outcome here in the analysis. The NMB has consistently looked at all the carriers, and there's certainly no case where a single carrier that is not a major player, vast percentage of the dictates the outcome here. And so the company's reliance on WestJet is really misplaced. WestJet, well, I would first say that I believe that their argument about WestJet in the reply brief is waived before you, because as they've emphasized for the very first time in the reply brief was the absence of personnel at the Fort Lauderdale Airport. Their argument basically turned everything they'd been arguing prior on its head and said, because we don't have personnel here, therefore, we are WestJet. We stand in the shoes of WestJet, and therefore, we are a carrier. And obviously, that is contrary to the statute and what they've been doing previously, which has been pointing to examples on the ground about how WestJet influenced them. So this was the first time this argument was made. It was in the reply brief. Who did the cleaning of the compartments while the strike was going on? The strike, Your Honor, I believe management did some of the cleaning. At issue were two one-day strikes. Management of ULEN or management of the carriers? No, the carrier, Spirit. To answer to your question, Your Honor, Ms. Alexander, the terminated worker here, she worked for Spirit as a cabin cleaner. And so it was her managers who stepped in on those days. And, in fact, that's part of the record below. So, yes, in answer to your question earlier, she worked for Spirit. WestJet is 15% of the workers were assigned to WestJet, 25 to 30. Spirit and Delta are the more dominant players at the airport. 50 to 60 employees in Spirit and Delta, 50. So the company would have you focus on WestJet. It's 15% of the workers are assigned to WestJet. I mean, doesn't the statute say any carrier, right, which would include WestJet or, you know, any carrier with respect to control? Well, the statutory language, any company which is directly or indirectly controlled or controlled under the common control with any carrier. But, historically, Your Honor, they don't, if there's record evidence about what is going on with all the, they look at all the carriers involved. There are no cases when the NMB, who the NLRB has historically followed, focuses only on one carrier, only if the carrier is extremely dominant. And even then there's going to be reference to the other carriers. There's no rule or practice that says you only look at one carrier. And certainly here, we all agree, the airport's... But can the reference to the other carriers defeat? I'm sorry? Can the reference to the other carriers defeat RLA jurisdiction? Because one of the purposes of the RLA is to prevent any kind of disruption in this sector, right, in the transportation sector. Yes. So I'm not sure I'm understanding your question. So if one carrier has significant control, the fact that other carriers have maybe less control, I'm not sure how those things fit together. I think that what the NMB has done is weighed that. So if the dominant carrier is subject to the control that meets the NMB's test that applies the statute, then the NMB has found RLA jurisdiction. But that is not the case here. None of the carriers here meet the NMB's control test. It's not the case here. We're not conceding, no one's conceding here that any of the carriers meet the control test. In fact, none of them do. But the analysis is as a group. But I think you should be comfortable here that none of them do. They have different factors that they don't all have the same elements. That's the nature of this multi-factor, factors within factor test. But this is not a case where one carrier is clearly controlled, where one contract, one relationship is clearly controlled by a carrier. That's not what we have here, Your Honors. All right. Thank you. Thank you, Your Honors. All right. I think you had a minute and a half left. Thank you, Your Honor. Spirit and Delta also control. I just want to point out a few of the factors that show they're controlled. Both of them require us to impose their training. In fact, they make us use their computers, and our employees have to go to their computers to take online training courses. Delta created seven training courses for ULIN employees. Delta requires us to use three of their pieces of equipment to do the cabinet cleaning. Spirit requires a ULIN employee to sit in with their headquarters as the coordinator to watch all the flights coming. They average 53 flights a day over a week. And we have to have a ULIN employee sit alongside the Spirit control center so that Spirit can give us direction on where to send all of our employees. That, Your Honors, is control. Thank you. Thank you. We'll take the matter under advice.
judges: Wilkins, Rao, Randolph